**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-01556-CMA

BRUNILDA SUAREZ,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision to deny the application of Plaintiff Brunilda Suarez ("Plaintiff") for social security disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33. Jurisdiction is proper under 42 U.S.C. § 405(g).

## I.  BACKGROUND

Plaintiff filed an application for disability benefits, alleging a disability onset date of June 30, 2008.  Plaintiff was born on May 20, 1964, and was 44 years old on the date of her alleged disability onset.  (AR at 138.)[1]  After her initial application was denied, Plaintiff requested a hearing, which was held on January 25, 2013, before an Administrative Law Judge ("ALJ").  (AR at 28.)

---

[1] Citations to the Social Security Administrative Record, which is found at Doc. # 7, will be to "AR" followed by the relevant page number.

In July 2005, Plaintiff suffered a work-related injury to her back.  An MRI showed diffuse degenerative disk disease with posterior annular tearing.  In June 2008, Plaintiff had a lumbar fusion of her L4-5 and L5-SI vertebrae.  (AR at 30-31.)

At the hearing, Plaintiff testified that she was born in Puerto Rico and Spanish is her native language.  In 2009, she began taking classes at Pikes Peak Community College to learn English, but was not currently enrolled at the time of the hearing.  (AR at 32-33.)  She testified that her college had a program that allowed her to stand or elevate her legs as needed to alleviate any pain she experienced while sitting in class. (AR at 38-39.)

Plaintiff lives with and takes care of her sixteen-year-old daughter, whom she cooks for and drives to school.  (AR at 35.)  Plaintiff testified that she cooks simple meals, and experiences lower back pain if she stands too long while cooking.  She has constant pain, which worsens when it's cold.  (AR at 36.)  To treat her pain, she does stretching exercises and takes Percocet and Soma, which make her drowsy.  (AR at 34, 37.)  She claimed that although her first surgery helped initially, her pain has worsened. She stated that she needs an additional disc fusion surgery, but has not scheduled it because the surgeon who performed her initial surgery passed away.  (AR at 41.)

Plaintiff reported that she can stand 20 to 30 minutes before she has to move, sit, or stretch.  (AR at 39.)  She stated that she can sit for 15 to 30 minutes before she has to get up and stretch.  Every hour for about 15 to 20 minutes, she has to lie down and raise her legs to alleviate pain.  (AR at 39.)  She claimed that she can lift no more than 10 pounds.  (AR at 40.)

A vocational expert ("VE") testified at the hearing.  The ALJ posed a hypothetical question to the VE that assumed an individual with the same age, education, and work experience as Plaintiff, and the residual functional capacity ("RFC") ultimately assessed by the ALJ.   The VE testified that such a person could perform work as a call-out operator, teleportation clerk, and a surveillance system monitor.  (AR at 44-46.) Plaintiff's attorney asked the VE if having a heavy accent would affect the hypothetical person's ability to be a call-out operator or teleportation clerk.  The VE responded, "I think as long as the [accent] would not impair the level of communication, I think that the job would be okay, but if the accent was so severe that . . . people would not understand the hypothetical individual, then I think it could potentially eliminate [those] job[s]."  (AR at 47-48.)

On February 11, 2013, the ALJ issued an unfavorable decision, denying benefits. (AR at 19-27.)  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012.  In applying the five-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 30, 2008 [Step 1];

2. Plaintiff had the following severe impairments: "lumbar degenerative disc disease, post decompression, and fusion" [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4. Plaintiff had the RFC "to perform sedentary work, as defined in 20 C.F.R. 404.1567(a) and 416.967(a), and which does not require more than

occasional bending or squatting and no exposure to cold temperature extremes." [Step 4]; and

5. Plaintiff was not able to perform her past relevant work, but "there are jobs that exist in significant numbers in the national economy that [she] can perform" [Step 5].

Plaintiff requested that the Appeals Council review this portion of the ALJ's decision, which it declined to do.  (AR at 1-5.)  On June 3, 2014, Plaintiff filed his appeal to this Court of the Commissioner's final decision.  (Doc. # 1.)  Plaintiff filed his opening brief on November 13, 2014, the Commissioner responded on January 16, 2015, and Plaintiff replied on February 2, 2015.  (Doc. ## 11, 14, 15.)

## II.  **STANDARD OF REVIEW**

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

## III.  **ANALYSIS**

Plaintiff raises four separate arguments in support of her contention that the ALJ's decision should be reversed.  However, two of these arguments are interrelated.

Thus, the Court will address, in turn, the following contentions: (1) whether the ALJ erred in assessing the medical and other source opinions in the record, (2) whether the ALJ erred in assessing Plaintiff's credibility, and (3) whether the ALJ was required to develop the record with respect to Plaintiff's limited English.[2]

## A.   WHETHER THE ALJ FAILED TO ASSIGN PROPER WEIGHT TO THE MEDICAL AND OTHER SOURCE OPINIONS

Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Meyer.  According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2).  In deciding how much weight to give a treating physician's opinion, an ALJ must first determine if the opinion is entitled to controlling weight.  *See Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).  An opinion is so entitled if it is well-supported by the medical evidence and is consistent with other substantial evidence in the record.  *See id.*  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir. 1989) (internal quotation marks omitted).

---

[2] Plaintiff argues that the ALJ failed to develop the record with respect to Dr. DeAngelo's and Dr. Suyeishi's opinions.  However, the substance of Plaintiff's arguments appear to concern whether the ALJ adequately explained his reasons for assigning weight to these opinions in his decision, rather than whether the record itself was poorly developed.  Accordingly, the Court will analyze the weight assigned to these opinions pursuant to case law requiring that the ALJ assign and explain the weight given to each opinion in the record.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Under Tenth Circuit case law, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and citations omitted).

In determining that Dr. Meyer's opinion regarding Plaintiff's physical limitations were entitled to little weight, the ALJ found that Dr. Meyer's opinion was not consistent with his physical examination findings (AR at 25). *See* 20 C.F.R. § 404.1527 (c)(2)(consistency); (c)(3)(supportability). Specifically, the ALJ discussed at length Dr. Meyer's physical examination findings, and then concluded, "Dr. Meyer has not documented limited range of motion, back spasms, muscle atrophy, motor weakness, or other clinical findings that would suggest the need for a limitation to less than 10 pounds of lifting or a sit/stand opinion." (AR at 24-25.) Moreover, the ALJ noted that Plaintiff's physical examination findings have remained stable and that the medical record reflects

"significant improvement, such that [she] was able to travel, attend classes, and walk for at least a mile, without the use of a cane." (*Id.*) An ALJ is not required to "discuss all the § 404.1527(c) factors for each of the medical opinions before him," *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), and in the instant case the reasons given by the ALJ are "sufficiently specific to make clear . . . the reason" for the weight the ALJ gave to Dr. Meyer's opinion. *See Langley*, 373 F.3d at 1119. Plaintiff's arguments that "Dr. Meyer's opinions are consistent with the physical examination findings" essentially ask this Court to reweigh the evidence, which it is not entitled to do. *See Oldham*, 509 F.3d at 1257-58 (reviewing court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo"); *Salazar*, 468 F.3d at 621 (reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner). Accordingly, the ALJ did not err in assigning Dr. Meyer's opinion little weight.[3]

Next, Plaintiff contends that "the ALJ failed to develop an adequate record describing why the assessments of Dr. Suyeishi and Dr. DeAngelo merited great

---

[3] Plaintiff further alleges that Dr. Meyer "noted [she] suffered mental limitations, in addition to her physical limitations." (Doc. # 11 at 11.) However, Plaintiff fails to provide citations to where in the record Dr. Meyer opined on these limitations. The Court has reviewed Dr. Meyer's clinical notes, in which he states, "Because of her increasing anxiety and depression, I have recommended a Lexapro trial. She will go up to 10 mg daily for one month and then we will re-evaluate." (AR at 262.) In 2009, he recommends that she take Xanex to "help her sleep while also relieving her anxiety . . . ." (AR at 276.) However, at other points, he notes that she has "no signs of depression." (AR at 278, 279.) Thus, the Court is unable to locate where Dr. Meyer opined on mental limitations. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Miller v. Astrue*, 496 F. App'x 853, 855 (10th Cir. 2012); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of . . . review . . . is limited to the issues the claimant . . . adequately presents on appeal.")

weight." (Doc. # 11 at 12.)  The Court construes this as an argument that the ALJ erred in assigning great weight to these opinions.  Dr. DeAngelo, a consultative examiner, opined that, although Plaintiff had some work-related limitations due to back pain, she had only mild limitations related to psychological symptoms.  (AR at 295.)  The ALJ assigned the opinion great weight, and it is apparent that he did so because Dr. DeAngelo's opinion was consistent with the objective findings of the examination and consistent with Plaintiff's self-reported daily activities.  *See* 20 C.F.R. § 404.1527 (c)(2)(consistency); (c)(3)(supportability).  Likewise, the ALJ adequately explained that he assigned great weight to state agency psychological consultant, Dr. Suyeishi's opinion that Plaintiff's mental impairments were nonsevere, because it was consistent with Dr. DeAngelo's findings and the medical record as a whole.  *See* 20 C.F.R. § 404.1527 (c)(2)(consistency); (c)(3)(supportability).  The Court perceives no error in weighing these opinions.[4]

Finally, Plaintiff contends that the ALJ erred when he gave no weight to the vocational expert report prepared by Rehabilitation Consultant, Bruce Magnuson, who provided vocational rehabilitation services to Plaintiff while she collected workman's compensation benefits.  Social Security Ruling 06–03p clarifies how the Commissioner considers opinions and other evidence from other sources, such as rehabilitation

---

[4] Because the ALJ reasonably relied on Dr. DeAngelo and Dr. Suyeishi's opinions in determining that Plaintiff did not have mental limitations, Plaintiff's RFC was supported by substantial evidence to the extent it did not include mental limitations.  *See Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).  At Step Two, the ALJ determined, based on these two opinions that Plaintiff's mental impairments were not severe.  Thus, the ALJ was not required, as Plaintiff asserts, to further explain "how the 'no more than mild limitations' of [Plaintiff], in areas related to concentration, persistence, and pace reconcile with SSR 85-15 and POMS DI 25025.10B3, for even unskilled workers."

counselors, who are not acceptable medical sources.  2006 WL 2329939 at *1-4.  While

only acceptable medical sources can give medical opinions, evidence from other

sources, who are not acceptable medical sources, can show the severity of the

impairment and how it affects the individual's ability to function.  *Id.* at *2.

"Adjudicator[s] generally should explain the weight given to opinions from these 'other

sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant

or subsequent reviewer to follow the adjudicator's reasoning."  *Id.* at *6.  As with medical

source opinions, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1527

when determining the weight to assign to an other source opinion.  *Id.*  at *4-5, 7; *Frantz*

*v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (same).

In the instant case, the ALJ determined Mr. Magnuson's opinion was entitled to

no weight because it was "vague and inconclusive" and "he does not cite specific work

limitations or physical examination findings to support his opinion."  (AR at 25.)  This

was an appropriate reason to disregard Mr. Magnuson's opinion because, as an other

source, the ALJ could rely on his opinion only to "show the severity of the impairment

and how it affects the individual's ability to function."  SSR 06-03P, 2006 WL 2329939 at

*2.  Therefore, the ALJ did not err in assigning the weight that he assigned to the

medical and other source opinions in the record and the RFC is supported by

substantial evidence.

**B.   WHETHER THE ALJ ERRED IN ASSESSING PLAINTIFF'S CREDIBILITY AND COMPLAINTS OF PAIN**

Plaintiff contends that the ALJ erred by not properly assessing her credibility and

complaints of pain.  "[C]redibility determinations 'are peculiarly the province of the finder

of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2011) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Provided the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  *Id.* at 910; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record").  Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on a reviewing court.

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993).  Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain."  *Id.* (citations omitted).  As the Tenth Circuit has explained:

> [The Court] must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* (discussing the *Luna* factors).  SSR 96-7p provides a non-exhaustive list of factors that an ALJ considers, in addition to the objective medical evidence, when determining whether she finds Plaintiff's complaints of disabling pain credible.  Those factors include:

> (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) medications and any side effects; (5) treatment, other than medication, that the individual has received; (6) measures other than treatment that Plaintiff uses to relive pain; and (7) any other relevant factors.

SSR 96-7P, 1996 WL 374186, *3.

The Court disagrees that the ALJ failed to consider these factors in assessing Plaintiff's credibility and complaints of pain. The ALJ specifically considered Plaintiff's testimony related to her daily activities and explained, "there is no indication in the medical record that [she] has reported to her medical providers that her [activities of daily living] are as limited as she alleges." (AR at 25.) The ALJ also considered her use of medications and stretching to treat pain, and noted that she did not report significant side effects from her medications. Additionally, the ALJ considered factors that precipitate and aggravate the symptoms and appropriately limited Plaintiff to work that did not require exposure to cold temperature extremes. (AR at 23-25.) The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must set forth only the specific evidence he relied upon in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The Court finds that the ALJ did address specific evidence he believed undermined Plaintiff's credibility and, therefore, his analysis was sufficient. *See Lately v. Colvin*, No. 13-1131, 2014 WL 1227632, *3 (10th Cir. 2014) (order and judgment) (ALJ's discussion of evidence demonstrates record was adequately developed and precedent requires nothing more).

**C.   WHETHER THE ALJ FAILED TO DEVELOP THE RECORD WITH RESPECT TO PLAINTIFF'S LIMITED ENGLISH**

Finally, the Court addresses Plaintiff's argument that the ALJ failed to develop the record regarding her limited English speaking skills.  In every social security case, the ALJ must "'ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'"  *Hawkins v. Chater,* 113 F.3d 1162, 1166 (10th Cir. 1997) (quoting *Henrie v. United States Dep't of Health & Human* Servs., 13 F.3d 359, 360-61 (10th Cir.1993)).  Because a disability hearing is nonadversarial, the ALJ maintains this duty even when the claimant is represented.  *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993).  The Commissioner's regulations state,

> Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do.

20 C.F.R. § 404.1564.

The ALJ specifically determined that Plaintiff was able to communicate in English and the Court disagrees that he had a duty to further develop the record in this regard. Plaintiff communicated with the ALJ and her attorney without an interpreter at the hearing.  She also reported taking college level courses and communicated with her doctors in English.  Indeed, at the hearing, when questioning the VE, Plaintiff's attorney focused not on whether Plaintiff's alleged limited English would preclude her employment, but on her accent.  Accordingly, the ALJ's determination that she was able to communicate in English was supported by substantial evidence.

## IV. <u>CONCLUSION</u>

Accordingly, it is ORDERED that the ALJ's denial of social security disability

benefits is AFFIRMED.   Each party shall bear its own costs and attorney fees.

DATED:  April __30__, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge